Mr. Petty. Good morning, Your Honors. Russell Petty representing the plaintiffs and appellants. May it please the Court. Your Honors, I think we have three questions presented here today. The first is whether the removal was defective. The second question is whether there's complete preemption here. In other words, as Judge By pointed out in the Thomas v. U.S. Bank case, whether this is one of the rare situations where federal law doesn't just provide a defense to a plaintiff's claims, but occupies the field to such an extent that plaintiff's claim is transmuted into a federal claim. And the third issue is whether conflict preemption exists. In other words, whether the ICCTA provides a defense to plaintiff's claims without providing a basis for removal jurisdiction. Your Honors, I think it makes sense to look at those three issues in that order, because obviously if the removal was defective, the court doesn't have to determine whether it has subject matter jurisdiction. That's moot. And the second point, if there's no subject matter jurisdiction, then of course the court doesn't really have the power to go ahead and determine whether conflict preemption is met. At any rate, I submit that the conflict preemption issue should be decided in the first instance by the state court of Iowa. Dealing with the first question first, the propriety of the removal, this court in Moreno Enterprises has held that the In Christensen, this court addressed the form that the consent has to take, and it said there's no real set rule. However, each defendant has to file a timely notice of consent, a timely written notice of consent. And I think the facts of this case are without dispute that that just wasn't done. The Union Pacific UP, I'll call them, was the last served defendant on June 10th. As such, all defendants under Christensen and Moreno Enterprises had until July 10th to file some timely filed written indication that they consented, and the Stickles defendants did not file their consent until well after this on July. Why was the Union Pacific's certification of consent by all the defendants? Why is that not enough? Well, Your Honor, I mean, that's just not the law in this circuit. I practice primarily in the Ninth Circuit. In the Ninth Circuit, the rule is clear that one counsel is able to certify the consent for all counsel, and that's accepted. Other circuits have a rule where all defendants have to sign the notice of consent, and this circuit has adopted in Pritchett and Christensen a hybrid rule that says that not everybody has to sign the notice of consent. However, let me just quote from the case. Christensen says, in this circuit, it is not necessary for all defendants to actually sign the notice of removal so long as there is some timely filed written indication from each served defendant that the defendant has actually consented to the removal. So the real reason why the statement of consent in UP's notice wasn't effective is because it's just not the law in this circuit, Your Honor. At any rate . . . You think Christensen means that it has to be signed by the party or the party's hired lawyer? Christensen and Pritchett stands for the same principle as well, Your Honor. I think it very clearly states that there has to be either signing the notice of removal or else some filing by that party. And the facts in Christensen were that they found the filing to be, you know, filing a motion. And by filing a motion, the Christensen court held that that was sufficient to constitute that party's consent. But it stressed there does have to be a written filing from each party indicating consent. The late filing by the defendant. Was it Stickels? That's Stickels' defendant. Yes, Your Honor. Well, you know, I don't think that . . . The Christensen court did hold open the possibility that a late consent could be filed. But the reason why the court should . . . could be cured . . . But the reason why the court should not, you know, accept that here is because there just isn't any reason given. I mean, one of the things which is striking about this case is just how barren the record is of any reason why, you know, Stickels didn't properly . . . wasn't able to properly get their papers in on time. There's no statement that, you know, they had clients that were in jail or out of the country or anything like that, Your Honor. Let me say here as a federal judge, we're looking here at issues that involve federal preemption. And it seems, you know, why should we not say, well, wait a minute, this is not just a diversity case between . . . on a car accident or something like that. This is talking about federal issues. So, why shouldn't we be more generous in reading the removal to get the federal court to where the issues are going to be determined by federal law? Your Honor, state courts apply federal law. They handle federal claims. They handle federal defenses all the time. Federal courts are courts of limited jurisdiction, at least in the part of the country where I practice. They're overworked courts of limited jurisdiction. And, you know, you can, under certain circumstances, bring a case into federal court. But you have to follow certain rules. And when you fail to follow those rules, you know, then you go to the state court, which, you know . . . you know, provides, you know, judges and courtrooms and is able to address the same issues as a federal court is able to address. And frankly, Your Honor, that's what should happen here. Dealing with the preemption issue, as the court pointed out. The first issue is whether there's complete diversity under the ICCTA. And this issue turns on whether the congressional intent that the area be regulated entirely by federal law is so strong that, you know . . . plaintiff state law claims are changed into federal claims. And logically, of course, this turns on the issue of whether there is a federal claim for the plaintiff state law negligence claims. There are claims that the defendant's negligent use of their property caused property damage to the plaintiff's property. Whether there is, in fact, a federal claim that could be brought. And I cited to numerous cases in our papers, saying that an alternate federal remedy is an absolute prerequisite for the court to find a complete jurisdiction. Cited to, you know, Beneficial National Bank and Johnson from this circuit, Wayne from the Ninth, Hood from the Fifth, Schmilling from the Tenth. But, we don't have to go any further than Judge By's opinion in Thomas v. U.S. Bank, where he categorically made this precise point, if I can quote from that case. Complete preemption, as opposed to ordinary or conflict preemption, is rare, however, and only applies if the federal statutes at issue . . . provide the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action. What is your claim that you assert? It appears to me, in reading your materials, that you're asserting maintenance of the railroad bridges and parking cars on the railroad bridges. That's correct, Your Honor. Now, is there anything else? That's the gist of what we're complaining about. Why are those not covered by federal law, though should be within the STB? Well, you know, there are two separate questions there, Your Honor. And, I think it's very important that we separate them because I think there's a lot of confusion in the briefs. Some of it, perhaps, intentional as to the difference between conflict preemption and complete preemption. It's one question to say whether the ICCTA provides a defense to our claims that the railroad's negligence caused property damage. It's another thing to say that there's complete preemption here. Complete preemption is a jurisdictional doctrine and stands for the proposition that you've basically got an alternative federal remedy, and that's what you should bring, similar to the ERISA cases where, you know, you don't have a state law claim for breach of contract in bad faith anymore, but you've got an ERISA claim for benefits. And so, if we're going to talk about complete preemption, the first question is, okay, where in the ICCTA is there this alternative remedy for us to, you know, to bring our negligence claims? And the answer is there isn't one, and that shows that complete preemption doesn't exist here. Now, you know, the second half of the court's question is why, you know, the specific claims we made here aren't preempted. It's a good question. It's one that I'm going to answer now, but it should really be the Iowa State Court that decides that, because this court does not have subject matter jurisdiction, just as the district court did not have subject matter jurisdiction, because removal jurisdiction does. Let's look at the general policy. If we were to say that the state courts can have negligence claims or whatever based on the maintenance and parking, maintenance of bridges and parking trains in the bridges, does that interfere with the regulation of the railroads? Well, you know, I mean, you know, this case is not that dissimilar from Washington County, in which this court held that the, and of course this was a conflict preemption case rather than, you know, a removal, a complete diversity case, but, I mean, it's still important because this court held that a state statute requiring that railroad bridges be properly maintained was not preempted by the ICCTA. I think it's telling. As I recall, did that involve a highway? Well, you know, I mean, there was a highway involved rather than, in this case, a waterway. I thought that's what drove the opinion, that you had a highway where there is regulation, where the states can regulate. I mean, there was trains, but it also involved the highway. Your Honor, that's the argument that's made. I promise you, you can read that opinion and you won't see anything in there about how this is important because highways are involved. Your Honor, the key fact of Washington County, just like the Franks case and numerous other cases that look at this preemption issue, is whether you've got a direct impact on, you've basically got three core areas that the ICCTA regulates and gives jurisdiction over to the Surface Transportation Board. You're talking about rates, you're talking about routes, and you're talking about operations. In other words, if you've got state regulation over how much you're allowed to charge when you're passengers, if you've got state regulation over when you're allowed to drive your trains or where you're allowed to drive your trains, then you're going to be within the scope of the Surface Transportation Board if you attempt to directly regulate those things. Now, this court in Washington County and numerous other courts have held that when you've got a state law which has only incidental impact on those issues, then it's not preempted and normal state law principles would govern. And what this court held in Washington County is, look, the safety of bridges is a traditional state law concern and requiring the railroads under the same Iowa statute that we're bringing our claims under, requiring the railroads to maintain their bridges and replace them when necessary, only has an incidental impact on railroad operations, but it's a traditional state law activity, and so we're going to hold that these claims are not preempted. Yes, Your Honor. What is the essence of your claim against the Union Pacific Railroad? What did they do wrong? What they did wrong, Your Honor, is by failing to maintain these bridges so that they collapsed and parking railcars loaded with ballast. Suppose instead of parking them there, a Union Pacific train was proceeding over the track and the bridge collapsed. Would that claim be preempted? That's a very good question, Your Honor, and it's a closer question, but I would say the answer is no. And let me just sort of explain why, Your Honor. I'm not serious about that. No, let me explain why, Your Honor. I'd love to explain it to you. Okay. If there was, let's say, for example, Iowa passed a state law that said you can't drive over these railroad bridges at night, okay, clearly within the scope of the ICCTA and the STP jurisdiction because it has a direct and substantial impact on railroad operations. If, on the other hand, Iowa passed a law that said you can't run these railcars on this bridge when there's a flood taking place, I submit, Your Honor, that what we're talking about there is an incidental regulation, an incidental impact on train operations because how often is there a flood? It's not something that railroads are going to have to take into account every time they attempt to run a train. It's something which is only going to happen. It deals with a traditional area of state law, which is public safety and has minimal impact on rail operations. And so I submit to you that that's the answer to that question, Your Honor. Getting back to my complete preemption argument, Your Honors, I'm just going to say that, you know, the arguing that we've got preemption here without there being an alternative cause of action is not only contrary to this court's decision in Johnson and Thomas and the Supreme Court's decision in the beneficial national bank case, but it's also a remarkable holding that, as the Fayard case said, you know, Congress thought that railroads were so important that it intended to immunize them from tort liability. It's an open question. We haven't had a chance to put on any evidence, an open question as to whether they acted in a tortious fashion and that caused substantial injury to a large number of people. And I submit that we, you know, that there is no congressional intent to immunize railroads from that type of conduct, assuming we can prove our case and that we should be given an opportunity to prove our case. I'm happy to answer questions. Otherwise, I'd like to reserve the balance of my time, Your Honor. The railroad cars were on top of the track to save the railroad cars, to save the bridges, to do both or what? My understanding of what happened, Your Honor, is they were on the track in order to help stabilize the bridge and the track in advance of the flood. So, in other words, it was an attempt to save the bridges and the track on top of the bridges, not the rail cars themselves. Your Honors, thank you. Good morning, Ms. Laughlin. Thank you. May it please the Court. My name is Alice Laughlin, representing Union Pacific. With me at counsel table are the counsel for both the other groups of defendants. In this action, plaintiffs filed this complaint under state law challenging core railroad operations, including where rail cars can be parked and for how long, the loading of these cars and the weight of these cars. They seek to hold the defendants liable for taking these actions. And at the same time, they seek to hold the defendants liable for not taking these actions. All the actions taken here were designed to ensure that the railroad could keep its operations running. That goes to the heart of the ICC Termination Act, or ICTA, I-C-C-T-A. And Congress intended to federalize, excuse me, Congress intended to ensure that the regulation of these decisions is exclusively federal. On the issue of complete preemption, there's already precedent from this Court. In Dayford v. Soo Line, this Court found complete preemption under the predecessor scheme, which was a scheme that had implied conflict preemption. After this Court issued this decision, Congress enacted ICTA, which provided express preemption and much broader preemption. And Congress did this to free the railroads from the burden of regulation that had put the industry on the brink of financial disaster. Well, here's the concern, or a concern that I have, is whether the plaintiffs have a remedy. Can they get relief if there is preemption? Yes, Your Honor. And under the STB? Well, let me be clear that there is a federal cause of action. And in fact, in the case law that we cite, the district court cites and the plaintiff cites, they talk about the federal cause of action. But I think it's important to understand why the plaintiffs can't come within the federal cause of action. And there's primarily two reasons. First is the statute of limitations. It's a two-year statute of limitations. They filed this action about five years after the acts at issue. The second reason is because Congress wanted only acts that the railroad took that were in violation of a federal order or a federal scheme, statutory scheme, to be actionable. And plaintiffs cannot meet that element. So the fact that they can't state a cause of action doesn't mean that there's no jurisdiction in the courts. It means that they can't state a cause of action. Again, they can't state a cause of action because? Because they can't meet a necessary element of the federal cause of action, which is to establish the violation of an STB order or a violation of the ICE Interstate Commerce Act. Excuse me, Your Honor. Did you have a follow-up question? Was it ever possible to do that? Yes, it is, Your Honor. In a situation like this? Yes, Your Honor. This is a court claim, not a state claim or anything like that. Your Honor, the scheme that Congress provided, which is in 49 U.S.C. 11704, provides for damages. And so it doesn't have all the elements of negligence, but provided that you show a violation of the act, any person can get damages against the railroad. So there is a cause of action. Now, I'm not sure that I answered the court's question. If there was an offending question, I may have forgotten. If they were violating some rule or regulation about their bridges, how they were built and maintained, or they were violating some rule or regulation about parking these cars on the tracks, and they filed it in two years, they could pursue it. But if there isn't an allegation of a violation of some rule or regulation on maintenance of bridges and parking cars, then they're out of luck. They are out of luck, and at page 35 of the opening brief of the plaintiffs, they admit that the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if plaintiffs were free to obtain remedies that Congress rejected. And there was one pending question that I don't think I answered completely. I wanted to go back to it, is how would the plaintiffs be able to – how would the Surface Transportation Board be able to provide an order that would give them relief in the future? And the Surface Transportation Board regulates the construction and operation of rail cars, of rail transportation. And when they do that, they impose conditions on the railroad. They impose conditions that could be similar to what the plaintiffs are asking, ensuring the free flow of water in case of a flood. And they have imposed those type of conditions. Landowners have gone in and asked the STB for that, and they have gotten those types of conditions. And I think that, Chief Judge Riley, you were on a case, mid-states versus STB, where that was a condition actually imposed by the STB, along with 148 other conditions. Railroads, as the Court knows, is a heavily regulated industry. And what they're interested in being regulated is by one entity, not 50, because the railroads can't survive by being regulated by multiple different jurisdictions, and the history proves it. Of course – So then, by way of example, the damages resulting to the local community and that ethanol train explosion west of Fargo will be strictly before the STB? Well, it depends on – I'm not familiar – Right now, that action actually is before the National Transportation Board, is my understanding. Not for damages? No, not for damages, but any damages actions. Now, I don't think that there were any personal injuries in that action. I think people have been cleared away. I guess we should concern ourselves with the facts at hand. I'm trying to quickly remember to the extent to which state law can require a railroad, put limitations on railroad. Can North Dakota state law limit the Burlington Northern Santa Fe's 150 coal trains a day? No. 30 miles an hour through downtown Fargo? No, they can't, and there's precedent from this Court saying that they can't. And that, again, goes to core operational decisions. Crossing arguments. I read in the Wall Street Journal the other day that Norfolk Southern was fined for blocking an intersection for three hours. That, again, would be before the board? That would be before the STB. Yes, it would. Now, there's certain things in the case law that both parties cite that explain what is regulated and what is not. Well, we shouldn't get off into that. The question is what was done in this case. Okay, well . . . What's your closest case or two that addresses this and says something like this where you have . . . would typically be a negligence claim for a property owner that has caused damage on another property owner. In this case, it's the railroad. What's the best case you have on that rather than these generic cases or just throwing out rules? Sure, I'm happy to respond. Actually, what do you have? I'm happy to respond. I think the closest case on point is the Elam versus Kansas City Southern Railroad case of the Fifth Circuit. And it was similar facts where the plaintiffs were complaining about the railroad parking its railcars for an extended period of time at a crossing. And as you know, that's a more sensitive issue because when you have a crossing, people are trying to get across, including emergency vehicles. But the Fifth Circuit found that that was completely preempted under the ICC Termination Act. And it has extensive discussion about the remedies and the interaction between the prior federal scheme and the current federal scheme, as well as the interaction between the federal courts and the Surface Transportation Board. Another case that was recently issued by Judge Lange out of the South Dakota was a case which was a flooding case. And they were complaining about the water not being able to get through and under the railroad's roadbeds. Up by Wall Bay, South Dakota, as I recall. That's correct. Now, the plaintiffs argued that that was a case involving an injunction. Now, that's not correct. The complaint itself asked for over $10 million from the railroad. And the railroad issue in there was BNSF. I think it's important to understand the Catch-22 that plaintiffs are setting up with the allegations in their own complaint. I mean, they're alleging that we took these actions. And in paragraph 30, and joint appendix 6, pages joint appendix 5 and 6, they're also complaining that we didn't take those actions. So how is a railroad going to operate its actions when they want? Typically, you would have a situation where you have one jury finding the railroad liable for taking these actions. And then another jury finding them liable for not taking these actions. But in here, they want the same jury to take those actions. And of course, if the railroad didn't take these actions, you could be assured that the shippers would be suing the railroad for not ensuring that their transportation was getting to its destination. And that's what we were trying to do. That's what the company was trying to ensure. And we think this goes to the heart of the ICC Termination Act. When the railroad takes actions to preserve its lines are open and that its trains can run, Congress didn't want the states to be deterring and regulating that conduct. Now, of course, the residents of Cedar Rapids received hundreds of millions of dollars in FEMA disaster relief. And the court has seen some of the litigation from the insurance companies and the property insurance. So there was another hundreds of millions of dollars that people received in the property insurance. They do have relief. But as to these defendants, they do not because they don't fit within the federal scheme. If the court doesn't have any questions, I'm happy to save the court's time. Let me ask you this about the district court's motion for judgment on the pleadings. I'm a little concerned that there is a judgment on the pleadings. The question here is this preemption. Shouldn't it be without prejudice or shouldn't it be so that they could go somewhere else, to the SDBs or someplace else? Well, as I understand, I understand that that was the court's intention, that preemption is preempted. This cause of action, this state cause of action is preempted. But it didn't preclude them. In fact, it referred them to the SDB. Now, we think that issue is moot. The plaintiffs have never sought any relief before the SDB. A year has gone by and they haven't pursued that option. So you're saying it truly was without prejudice to their underlying claim? Without prejudice as to taking it before the proper agency, which would be the SDB. Now, I hate to sort of mislead the court. I mean, our position before the SDB is that it's out of time and that they can't establish . . . I understand. Okay. You have your defenses. Yes. It read to me like the district court was finding this on the merits. Well, no. I didn't read it that way and certainly the court can clarify that. I mean, I read the court's opinion as being one of federal preemption. And that this is not the proper forum for these state claims. There's no further questions. I'm happy to . . . I can't resist asking this. I know I shouldn't. You're with Steptoe & Johnson. Yes, I am. Just as I asked one of your colleagues from that firm a year or so ago, is that Krispy Kreme store still down near your office? Yes, it is. And it's still serving caramel latte. And there's still a long line there. Thank you, Your Honor. Thank you. Okay, Mr. Miller. Good morning. May it please the Court, my name is Eric Miller and I represent the Cedar Rapids and Iowa City Railway and Alliant Energy. The gravamen of plaintiff's claims in this case is that the railroads acted improperly in placing weighted cars on the bridges during the time of the flood. That is, plaintiff is attempting to impose a state law standard on where and how the railroads should have moved their cars. They're saying the cars shouldn't have been at that particular place at that time. They should have been somewhere else. So that is a direct challenge to a core operational activity of the railroad. And that's within the heartland of what . . . They're not trying to impose a regulation. They're just trying to say that it should go to a jury and let the jury decide whether it's negligent. Well, but the way that the jury would decide that would be by imposing . . . The only regulation they're buying is you get a jury trial because of the negligence in operation or maintenance of your bridge. What courts have recognized, you know, Kearns against friction products is a recent Supreme Court case recognizing that states' law can regulate through tort law as well as through a statute or a regulation from an agency. The tort claim here is an attempt to impose a state law standard of care. The point that I'm trying to make is the state can't come in and say, change your bridge, don't park railroad cars on here. But if you do and you don't maintain it and it damages somebody's property, there's a tort claim for recovery of damages. All that is is just an application of tort law to say if there is negligence which approximately causes damages, you've got to pay for it. That's not telling them how to maintain the bridge and that's not telling them how to park their cars. It's just if you do it a certain way and it injures somebody, then you should pay for it. But the determination that that operational activity was negligent, that is that it violates some duty of care which would be imposed by state law as determined by the jury, is the sort of regulation that's prohibited. An example of that, as my colleague mentioned, is the Elon case. There was a train parked blocking a grade crossing and the driver of a car ran into the train while it was there and the plaintiff's claim was it was negligent of you to leave the train there without putting up a warning or something. What the Fifth Circuit said was to the extent that your claim is you should have put up a warning, you can bring that. But if your claim is it was negligent for the train to be there at this time blocking the grade crossing, that is subject to complete preemption. That was a case removed from state court to federal court on the basis of complete preemption. Then the Fifth Circuit said that the claim is then dismissed on the basis of . . . Do you have anything where it's the maintenance of the bridge or maintenance of the crossing where a car is just driving across the car crossing and because they haven't maintained it, something happens, it falls in a hole or something like that, damages the car or people? I'm not aware of any involving grade crossings and grade crossings are a weaker case for federal regulation. As the court discussed in the Washington County, Iowa case that came up earlier, the court's opinion in that case said that grade crossings are subject not just to the ICCTA but also to the Federal Railroad Safety Act and then a number of federal statutes specific to grade crossings, all of which recognize a role for state regulation and that's in deference to the traditional role of states in regulating highways. When we're talking about this is a bridge over a navigable waterway, there's no state highway involved, so the considerations are different. You don't have that reservation of state authority in those other statutes. This is directly within . . . In Cedar Rapids. Over what river? I believe it's the Cedar River. And so the other case that I think is instructive here is the Service Transportation Board's own order in the CSX declaratory order case, which involved a Washington, D.C. statute that prohibited the movement of hazardous materials within two miles of the U.S. Capitol. And that was not a railroad-specific statute. It prohibited any transport of hazardous materials. But the STB said as applied to railroads, that's preempted because it would restrict the movement of railroad cars, the movement of cargo on the railroads through that area, and that's within the STB's exclusive jurisdiction. And the board pointed out in that case that there are other federal regulatory agencies that can address that, the Federal Railroad Administration, for example. And the same thing is true here. There are other federal agencies that could impose standards if standards were thought to be necessary here, but those would be uniform across the states, and this is not. If this bridge were over Highway 1, whatever, U.S. Highway 1, regulated by the state, rather than a river, would the result be different? It would under Washington County. And again, that's because there is the FRSA and some of the other federal statutes specifically address the problem of grade crossings and bridge crossings over and under railroads and highways. So highways are treated differently under the statutes. Here we have no statutory carve-out. There's no federal statute that recognizes any role for states, and instead we have Section 10501B of the ICCTA, which is an extraordinarily broadly worded preemption provision that says that federal jurisdiction in this context is exclusive and that entirely displaces any state regulation. And as the Fifth Circuit has held and other courts have held, that converts even a putative state law claim into a federal claim that's removable and subject to preemption. Thurn. May I ask an interesting, to me at least, but irrelevant question? What is the Cedar Rapids? Is it a short-line railroad? How many miles of track does it have? I believe it's somewhere between 50 and 100. And it runs from where to where? I don't know the exact statistics. I guess it's not important, just interesting. Who was asking who to do what to get this? Was it the railroad saving the town? Was it the town begging for help? How did this all come about? These cars were parked on the railroads in essentially a metropolitan area. The cars were parked there in an effort to save the bridge. The bridge, as I understand it, is supported on stone piers that are sitting on the bedrock. And the idea is that when you have this extraordinarily high flood, there's a tremendous force of water pushing against the bridge. And in an effort to save it from washing away, you can stabilize it by adding weight to it to hold it down more firmly. And that is a practice that other railroads engage in. In this case, the flood was so great that it proved unsuccessful. Okay, thank you. Thank you. Eddie? Thank you, Your Honor. We're a little over four minutes. First, let me address the issue of the federal remedy, Your Honor. I feel more than a little bit whipsawed here because below, no one argued that we had a potential federal remedy. What we're being told below by Union Pacific is that there was no possible remedy. The mention of these two statutes, 11701 and 11704, they were never mentioned below. They're not in the district judge's order. And the first time I've heard that we have a potential claim under these statutes, but it's time-barred, is as I was sitting right over there at council tables. So, you know, if we had potential claims, the normal thing that would happen is we would be granted leave to amend, we would amend those claims, and then we would litigate whether they were time-barred or whether there might be some exception to the statute of limitations. None of that happened. None of that happened because UP argued and the district judge found that there was no possible federal claim and these particular statutes were not identified. And, you know, they're not applicable here anyway because as ELAM pointed out and as the council, you know, affirmed, they're really only good for violations of the ITTCA and the ITTCA doesn't say anything about negligent use of property. The ELAM is, I don't think it's being correctly... I mean, ELAM came to two conclusions, okay? The ELAM held that to the extent the state law... Well, there's a state law blocking statute that says you're not allowed to block a crossing for so many minutes and the ELAM court said that's preempted. And correctly so in all the blocking cases. There's a number of blocking cases. They all say preemption and the reason why, of course, is that's telling the railroads when they can drive their trains and that's direct regulation of railroad operation. However, the ELAM court also said that to the extent the railroad was negligent in failing to properly signal, that's not preempted. And so I think ELAM is actually a case which is, you know, it's not my favourite case but it certainly isn't harmful to us because that's what we're arguing here. We're arguing to the extent the railroad is negligent, we should be able to proceed. You know, Your Honour, there's a lot of cases and they really sort of fall along the lines of is the state law an attempt to directly regulate transportation? I mean, you look at all the blocking cases and, as I say, they're preempted because they're telling the railroad where they can drive their trains. On the other hand, the crossing cases, and it has nothing to do with the fact that there's a road involved, what it has to do with the fact is that it has only an incidental impact on transportation by allowing a landowner to put a crossing over a rail line and that's all the cases, that's what they talk about. What is the impact on transportation? And then you have the nuisance cases and they go both ways depending on the facts and logically so because depending on the nature of your claim, whether you're attempting to impact, you know, train operations, routes and rates, you may be preempted or you may not be. So, for example, you've got the Fayard case, which, you know, remanded because, you know, they held that there wasn't subject matter jurisdiction, but they did suggest that a nuisance claim that sought to restrict the hours a railroad could operate might be preempted. Emerson, it was a nuisance claim that was allowed because it was improper discarding of railroad ties and failure to maintain a drainage ditch and that case held that, well, you know, that has only an incidental impact on rail operations and so therefore we're going to say that's not preempted. And then you've got Pace where the nuisance was you've got this side track that they just put in and it's causing too much noise and smoke and that's clearly preempted because it has a direct impact. You know, the notion that whether a road is involved has anything to do with it, that's, you know, a sort of moon is full type of attempt to distinguish a case. It has nothing to do with the case's actual reasoning which is whether there's a direct impact on regulation. Yes, excuse me, on transportation. Yes, Your Honor. Sorry? I'm done, Your Honors. In other words, you're... I don't know if this is a question or a statement. You say that the state has authority over the structural... to determine the structural integrity of a railroad bridge. That is correct, Your Honor. There's a state law that gives Iowa that power and this court has held that that state law is not preempted by the ICCTA. It's directly on point. The structural integrity. The structural integrity, yes, Your Honor. And again, the name of that case was... Well, it's in your brief. It's a Washington County case. Could the state of Iowa have, before the flood, come in and said, you know, this bridge is not going to withstand a 50-year or 100-year flood? We want the railroad to fix it, to redo it. Well, those are exactly the facts of Washington County, okay? The county, rather than the state, came in and said, you know, these railroad bridges are old. We want you to replace them. And they said, you can't make us do that, and they went to federal court in an attempt to enjoin the county from proceeding in front of the state regulatory agency to force them to redo these bridges. And the federal court, this court, said that, no, you know, safety of bridges, it's traditional state regulation, and it's an incidental impact on actual rail operations. You know, if the state had wanted the railroad to, instead of fixing the bridge, move it 200 meters to the north or to the south, now you're engaged in modifying railroad routes, and now you're within the scope of ICCTA preemption. But just saying, you know, you're going to keep the line where it is, but we want a new bridge, we want a safe bridge, this court held that's not preempted. Okay. Well, we'll take a look at it, and we thank you for your arguments. Thank you, Your Honors. And we'll be back in due course. Thank you.